O. J. BARNES COMPANY, a Corporation, Respondent, v. M. C. SHEGGERUD, Appellant.

(173 N. W. 950.)

**Sales — measure of damages — market value — evidence.**

1. Defendant entered into a written agreement whereby he agreed to sell to the plaintiff one carload of potatoes at $1.10 per bushel f. o. b. Winnipeg, and guaranteed safe delivery thereof at Grand Forks, North Dakota. In an action by the plaintiff for damages occasioned by defendant's failure to deliver the potatoes, it is *held* that the measure of damages is the value of the potatoes at Grand Forks over the amount which would have been due to the defendant under the contract, if it had been fulfilled.

**Sale — proof of market value.**

2. For reasons stated in the opinion it is *held* that there was no proper evidence of the market value of the potatoes at Grand Forks.

Opinion filed July 19, 1919. Rehearing denied September 8, 1919.

From a judgment of the District Court of Grand Forks County, *Cooley,* J., defendant appeals.

Reversed and remanded.

*W. J. Mayer,* for appellant.

"The general rule with reference to the measure of damages for breach of contract of sale, whether the breach was by the vendor or the vendee, is that the injured party is entitled to recover the difference

NOTE.—The general rule with reference to the measure of damages for breach of a contract of sale, supported by a great number of cases, is that the injured party is entitled to recover the difference between the contract price of the article sold and the market value thereof at the time and place of delivery, as will be seen by an examination of the cases collated in a note in 57 L.R.A. 193, on damages for breach of contract of sale of article that has no market price.

On effect of contract to ship goods f. o. b. in general, see note in 62 L.R.A. 795.

between the contract price of the article sold and the market value thereof at the time and place of delivery." Note in 57 L.R.A. 193.

*McIntyre & Burtness,* for respondent.

"The circumstances attending the making of a contract are entitled to great weight in arriving at the intention of the parties, and, if the contract is ambiguous or uncertain, may be resorted to in determining the proper construction; and this rule refers not only to the general conditions under which the contract was made, but also to legal and physical conditions." 35 Cyc. 97.

"Though an agreement to sell goods f. o. b. cars at a designated place will ordinarily be regarded as an agreement to deliver the goods at that place, the meaning of the term depends on the connection in which it is used." Barnett & R. Co. v. Fall, 131 S. W. 649.

"The words 'f. o. b.' do not necessarily mean that title is to pass when delivered to a transportation company, but the whole contract must be looked to to determine where delivery is to be made." State v. Patterson (Wis.) 120 N. W. 227; State v. Park, 165 N. W. 289; Niemeyer Lbr. Co. v. Ry. Co. (Neb.) 74 N. W. 692; United States v. Andrews & Co. 207 U. S. 229, 52 L. ed. 185; Herring Co. v. Smith (Or.) 72 Pac. 704.

"If the words 'f. o. b.' are used in connection with the words fixing the price only, they will not be construed as fixing the place of delivery." 35 Cyc. 174.

"Where by the terms of the contract the seller is to select and deliver the goods at any particular place, or in any particular manner, the goods ordinarily remain his property and at his risk until they are delivered in accordance with the agreement." 1 Mechem on Sales, § 733; McNiel v. Brown (N. J.) 26 Am. St. Rep. 445; Hart-Parr Co. v. Finlay, 31 N. D. 130.

"Where the buyer reserves the right of inspection, until inspected at the place where the contract provides therefor, there is no delivery." Will v. Stone (Ind.) 69 N. E. 698; Eaton v. Blackburn (Or.) 96 Pac. 870; 35 Cyc. 288.

The measure of plaintiff's damage is fixed by our statute. Comp. Laws 1913, §§ 7153, 7178, 7179.

Plaintiff can recover the profit which he would have made on these potatoes had they been delivered to him. The right of the plaintiff to

recover these profits has been upheld in a number of cases. Lilly v. Lilly (Wash.) 81 Pac. 852; Shadvolt v. Topliff (Wis.) 55 N. W. 854; Wakeman v. Wheeler & Wilson, 101 N. Y. 205; Trego v. Arave (Idaho) 116 Pac. 119; Sedro Veneer Co. v. Kwopil (Wash.) 113 Pac. 1100; Schwab Safe Co. v. Snow, 140 Pac. 761; Baker v. Shaw, 138 Pac. 888; 35 Cyc. 644.

"Even conceding that this contract of sale provided for delivery f. o. b. Winnipeg, the defendant nevertheless must load the potatoes properly in a car at Winnipeg." 35 Cyc. 160; State v. Peterson, 120 N. W. 227; Culp v. Sandoval, 159 Pac. 956; Safe Co. v. Bank (S. D.) 125 N. W. 572.

CHRISTIANSON, Ch. J. Plaintiff brought this action to recover damages for the breach of a contract whereby defendant agreed to sell to the plaintiff a carload of potatoes. The defendant admits the contract and admits that he breached it, but contends that the plaintiff sustained no damages by reason of such breach. The defendant, also, counterclaimed for damages for the alleged breach by the plaintiff of a second contract of sale. The action was tried to the court without a jury. The court made findings, and ordered judgment, in favor of the plaintiff for $287.33, and interest, and dismissed the counterclaims. Defendant has appealed from the judgment.

The undisputed evidence shows that the plaintiff and defendant are both residents of Grand Forks, North Dakota. On January 13, 1913, at Grand Forks they entered into a written agreement whereby the defendant agreed to sell to the plaintiff "one car of 40,000 pounds or more white potatoes at $1.10 per bushel sacked f. o. b. Winnipeg, we to guarantee safe delivery at Grand Forks, shipped soon as possible—free from culls," and the plaintiff agreed to buy such potatoes on the terms stated.

The evidence shows that the plaintiff has been engaged in the business of buying and shipping potatoes for about eleven years, and that the defendant knew that plaintiff purchased said potatoes for the purpose of reselling them. Barnes testified: "He [Sheggerud] was to get them as far as Grand Forks in a condition free from frost;" and that, he (Barnes) "explained to Sheggerud that if he got the potatoes this far that we would take them on from here with other cars."

. It appears that the defendant did not have any potatoes at the time he made the agreement with the plaintiff, but that he had had some talk with a dealer in Winnipeg named Davis, in which Davis had asked defendant to find a buyer for a carload of white potatoes. It was this car of potatoes defendant had in mind when he made the agreement with plaintiff. After the agreement was signed, defendant went to Winnipeg and found that Davis had sold the potatoes to another party. On January 19, 1917, the defendant wired plaintiff: "Partner sold the potatoes to Minneapolis. If you can handle two cars at $1.15 let me know." Plaintiff immediately replied: "Our man Warberton is at McNaughton Fruit Auction Company, see him or telephone us how about cabbage. We shall expect the car contracted for, as we do not make one-sided deals, but will take two cars one fifteen our man will help load and pay for them." Upon receiving this telegram the defendant got into communication with Warberton, and some conversation was had between them. The counterclaims are predicated upon the alleged fact that defendant obtained three carloads of potatoes in accordance with the telegrams, and that Warberton failed to come and inspect them in accordance with the arrangement made between defendant and Warberton. There was a square conflict between Warberton and the defendant upon this question, and the trial court believed Warberton's version of the transaction. Under the facts found the trial court properly dismissed the counterclaims, and we see no reason for overturning the findings. Strictly speaking the question is not before us, for defendant has submitted no argument in support of the counterclaims on this appeal.

The principal question in controversy is with respect to the amount of damages plaintiff is entitled to recover, or rather on what basis such damages should be computed. The defendant contends that under the terms of the contract he was not obligated to deliver the potatoes in Grand Forks, but that the same were to be delivered at Winnipeg, and that in computing plaintiff's damages the market price at Winnipeg controls. We are unable to agree with defendant's contention. It is true the price of the potatoes was fixed by the parties f. o. b. Winnipeg, but the obligations of the defendant were not fulfilled by delivery to a carrier at that point. By the express terms of the contract the defendant assumed the risk of transportation, and guaranteed "safe delivery"

of the potatoes to the plaintiff "at Grand Forks." This is the contract which defendant made, and for the breach of which plaintiff asks damages.

Under our laws the measure of damages for the breach of an obligation arising from contract, except when otherwise expressly provided, is the amount which will compensate the party aggrieved for all the detriment approximately caused thereby, or which in the ordinary course of things would be likely to result therefrom. Comp. Laws 1913, § 7146. "The detriment caused by the breach of a seller's agreement to deliver personal property, the price of which has not been fully paid in advance, is deemed to be the excess, if any, of the value of the property to the buyer over the amount which would have been due to the seller under the contract, if it had been fulfilled." Comp. Laws 1913, § 7153. And "in estimating damages, except as provided by §§ 7179 and 7180, the value of property to a buyer or owner thereof deprived of its possession is deemed to be the price at which he might have bought an equivalent thing in the market nearest to the place where the property ought to have been put into his possession, and at such time after the breach of duty upon which his right to damages is founded as would suffice with reasonable diligence for him to make such a purchase." Comp. Laws 1913, § 7178.

We are all agreed that in ascertaining the amount of plaintiff's damages the market price at Grand Forks is controlling. The plaintiff introduced evidence showing the freight rates on potatoes from Winnipeg to Grand Forks, and the amount of duty on potatoes imported from Canada. That is, plaintiff showed what the potatoes would have cost him laid down in Grand Forks. The plaintiff, also, introduced some evidence as to the market value of potatoes in Grand Forks, and the writer is inclined to the view that the evidence furnishes substantial support for the findings; but a majority of the court are of the opinion that the evidence, taken as a whole, merely shows what plaintiff could have sold the potatoes for in other markets, and not the market price of potatoes in Grand Forks. And while the members of the court are all agreed that under the evidence in this case plaintiff is entitled to judgment in some amount, a majority are of the opinion that the evidence is in such condition that it is impossible to fairly determine the amount of such damages. It therefore becomes necessary to remand the case

for a new trial in order that proper evidence may be introduced and this issue properly determined. The judgment is therefore reversed, and the cause is remanded for further proceedings in accordance with the views expressed in this opinion. Neither party will recover costs on this appeal.